## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SCOTT DAVIS,

     *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant*.

_____/

CASE NO. 15-13028

DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
### (Docs. 13, 14)

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Davis's Motion for Summary Judgment (Doc. 13) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 14) be **GRANTED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. §§ 401-34 and Supplemental Security Income ("SSI"). (Doc. 6.) The matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 14.)

On September 17, 2012, Plaintiff filed the present claim for SSI and DIB, alleging that he became disabled on December 15, 2011. (Tr. 88.) Plaintiff's initial claim was denied, (Tr. 100-01,) and Plaintiff requested a hearing. (Tr. 115.) On November 27, 2013, Plaintiff appeared before Administrative Law Judge ("ALJ") Janet L. Alaga-Gadigian, who considered the application for benefits *de novo*. (Tr. 37-68.) The ALJ found that Plaintiff was not disabled on March 20, 2014. (Tr. 20-36.) The ALJ's decision became the Commissioner's final decision on, June 26, 2015, when the Appeals Council denied Plaintiff's request for review. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

On August 26, 2015, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Pl. Compl., Doc. 1.) Plaintiff filed a motion for summary judgment and supporting brief on December 16, 2015. (Doc. 13.) Defendant filed a response and cross motion for summary judgment on January 14, 2016. (Doc. 14.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), these motions are ready for report and recommendation without oral argument.

**B.    Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Id*. (internal citations omitted).

### C.      Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.    ALJ Findings

Following the five step analysis, the ALJ found that Plaintiff was not disabled under the Act. At step one, the ALJ found that Plaintiff met the insured status requirements through March 31, 2013, and had not engaged in substantial gainful activity since the alleged onset

4

date, December 15, 2011. (Tr. 25.) At step two, the ALJ found Plaintiff had the following severe impairments: "lumbar spine, moderate herniation L5/S1, compromising right S1 nerve root, with lumbar radiculopathy; cervical spine herniated disc, status post fusion; positional vertigo; chronic pain syndrome, shoulder and elbows; and adjustment disorder." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 26) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work

> except he should have a sit/stand option at will. He should do no pushing or pulling with the lower extremities and no operation of foot controls. He should never climb ladders, ropes, or scaffolds. He can do no more than occasional climbing ramps or stairs, balancing, stooping, crouching, kneeling, and can never crawl. He can do no more than frequent rotation, flexion, or extension of the neck and no more than frequent reaching, with no more than occasional overhead reaching. He must avoid all exposure to hazardous machinery or unprotected heights. Work is limited to simple jobs as defined in the DOT with SVP levels 1 or 2, with simple, routine tasks. He should have no more than occasional interaction with the general public, co-workers or supervisors.

(Tr. 27.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 30.) At step five, the ALJ found that a significant number of jobs existed which Plaintiff could perform despite his limitations. (Tr. 31.) The ALJ also found that Plaintiff was forty-one and therefore a younger individual (ages 18-44) as of the alleged onset date. (Tr. 30.) As a result, the ALJ found Plaintiff is not disabled under the Act. (Tr. 31.)

### E.    Administrative Record

### 1.    Medical Records Prior to the Alleged Onset Date

In September 2000, an MRI of Plaintiff lumbar spine revealed at L5-S1 a "[m]oderate sized central and right disc herniation compromising the right S1 nerve root." (Tr. 230.)

On April 2, 2007 an MRI of Plaintiff's cervical spine revealed a "paracentral region impacting the thecal sac and the spinal cord." (Tr. 231.) In June 2007 Plaintiff underwent cervical spine fusion surgery. (Tr. 232-34, 244-45.) On July 2, 2007, Plaintiff's surgeon observed improved bicep strength and normal posture, strength, reflexes, sensation, and range of motion in the cervical spine. (Tr. 242.) Plaintiff received outpatient therapy from August 2007 through October 2007. (Tr. 269.) His physical therapist reported some progress and that he "does not demonstrate severely effected [sic] strength or [range of motion] issues." (*Id.*) However she noted that he reported a higher pain rating than when he initially reported to therapy and had less increase in daily activity than expected given his age and "fairly healthy physique." (*Id.*)

From September through November 2007, David M. McElroy, M.D., observed full range of motion in Plaintiff's arms and cervical spine with good strength and no muscle atrophy in the upper extremities. (Tr. 279, 284, 287.) An EMG of Plaintiff's right upper extremity on November 19, 2007 was normal. (Tr. 279.) Dr. McElroy approved Plaintiff to return to work in December 2007. (Tr. 281.)

On April 21, 2008, Rodrigo Tobar, Jr., D.O. assessed Plaintiff with chronic pain syndrome in his shoulders and elbows. (Tr. 290.) Examination revealed muscle atrophy and weakness of the arms. (*Id.*)

On May 12, and June 10, 2008, Plaintiff continued to complain of elbow pain and "perceived weakness of the upper extremities." (Tr. 331, 329.) Examination by Dr. McElroy revealed normal range of motion of the cervical spine and arms, no focal weakness, and symmetric reflexes. (*Id.*) An EMG was negative and Plaintiff had no acute denervation. (Tr.

6

329.) Nerve conduction studies showed "some slowness of the ulnar distal latencies." (Tr. 330.) On May, 12, Plaintiff requested that Dr. McElroy complete disability forms; however Dr. McElroy stated that "[f]rom an exam standpoint I really have nothing to go by in terms of objectively commenting on this." (Tr. 332.)

On June 13, 2008, a consultative examination was completed by Cynthia Shelby-Lane, M.D. (Tr. 367-70.) Plaintiff reported "chronic neck, bilateral shoulder, elbow, wrist, and hand pain. He has occasional spasms and tremors. He has paresthesias of his arm in the forearm area. He has problems with standing, lifting, pushing, pulling and reaching." (Tr. 368.) Dr. Shelby-Lane noted that Plaintiff did not use a walking aid; had normal gait and stance; could tandem, heel, and toe walk without difficulty; could "squat to 50% of the distance and recover and bend to 60% of the distance and recover;" had equal bilateral grip strength; intact dexterity; normal muscle tone; intact sensation, and "[s]traight leg raising while lying 0-50, while sitting 0-90." (Tr. 369.) She observed normal reflexes and normal range of motion in the cervical and lumbar spine, shoulders, right elbow, hips, knees, ankles, wrists, hands, and fingers and normal reflexes. (Tr. 371-74.) She noted that Plaintiff can stand, bend, stoop, carry, push, pull, button clothes, tie shoes, dress, dial a phone, open a door, make a fist, pick up a coin, pick up a pencil, and write. (Tr. 373.) Dr. Shelby-Lane opined that Plaintiff continues to have chronic pain in his neck, wrists, and left elbow and needs ongoing care. (Tr. 370.)

On October 21, 2008, Plaintiff complained to Dr. Tobar of neck and shoulder pain, muscle strain in both arms, and joint stiffness in both elbows. (Tr. 294.) No swelling, induration, edema, or erythema was noted in either shoulder. (*Id.*) Dr. Tobar diagnosed chronic pain again as well as prehypertension. (Tr. 295.)

7

On January 12, 2009, Plaintiff began treatment with Manuel Lopez-Diez, M.D. and Maury R. Ellenberg, M.D. (Tr. 425-26.) Plaintiff reported "[n]eck, shoulder, back pain with weakness in the neck, back, shoulder, hands, arms, wrists, elbows, and right leg." (Tr. 426.) Upon examination Plaintiff had a normal gait, could heel and toe walk, could squat and rise, had full back range of motion, normal muscle strength, normal reflexes, and intact sensation. (Tr. 429.) It was noted that "all of this movement[] gets some moaning and groaning from the patient referring some back pain and neck pain." (*Id.*) The impression was neck pain status post anterior fusion, neck radicular symptoms, and myofascial pain." (*Id*) Plaintiff was referred to a functional recovery program. (Tr. 427.)

A January 2009 CT scan of Plaintiff's cervical spine revealed "a small broad-based posterior osteophyte complex asymmetric to the right leading to mild effacement upon the ventral thecal sac." (Tr. 455.)

Throughout 2009, Plaintiff continued to report pain in his neck shoulders, and arms to Dr. Ellenberg. (Tr. 408, 413, 416, 419.) Upon examination, Dr. Ellenberg repeatedly noted normal range of motion in his back and legs, normal gait, ability to heel and toe walk, ability to squat and rise, normal reflexes, and normal strength. (Tr. 408, 413, 416, 419.) Dr. Ellenberg noted limitation of motion in Plaintiff's left elbow in February and November. (Tr. 208, 219.) She also consistently noted that raising Plaintiff's arms or moving his neck causes Plaintiff neck/shoulder pain. (Tr. 408, 413, 416, 419.) In August 2009, Dr. Ellenberg noted "numerous areas of myofascial pain" and "give way weakness." (Tr. 413.) In November, Dr. Ellenberg noted "a flexion contracture of the left elbow of 20 degrees" and that some uptake in the elbows was shown in a bone scan. (Tr. 408.) She recommended an x-ray of the elbow. (*Id.*)

8

On November 23, 2012 Plaintiff attended a second consultative examination with Dr. Shelby-Lane. (Tr. 392-99.) Plaintiff reported "back problems, arthritis, problems with the right hamstring in the leg, nerve damage, hemiparesis, wheelchair, posttraumatic stress disorder, depression, paranoia, [and] personality disorder." (Tr. 392.) Although Plaintiff reported using a walker or cane Dr. Shelby-Lane noted that he did not use any assistive device to ambulate during the exam. (*Id.*) Dr. Shelby-Lane noted that Plaintiff was alert and oriented x3; had no spinal deformity, swelling, or muscle spasm; could get on and off the table slowly, could tandem, heel, and toe walk slowly, could squat and bend to 70 percent, and demonstrated "[s]traight leg raising while lying 0-50, while sitting 0-90.". (Tr. 394.) She noted normal range of motion in the cervical and lumbar spine, shoulders, elbows, knees, ankles, wrists, hands, and fingers. (Tr. 396-97.) She did note limited range of motion in the forward flexion of the hip. (Tr. 396.) Based on Plaintiff's exam and reported history of chronic neck and back pain, mental illness, and hemiparesis in 2007, Dr. Shelby-Lane opined that Plaintiff needs long-term treatment for his medical problems. (Tr. 394.) She noted, "There is no evidence of neurological disorganization but based upon the history, he may have difficulty with repetitive and heavy bending, pushing, pulling and lifting due to his previous neck surgery." (*Id.*)

## 2.    Medical Records After the Onset Date, December 15, 2011

On December 17, 2012, Julia A. Czarnecki, MA, LLP and Nick Boneff, Ph.D. completed a consultative examination of Plaintiff. (Tr. 401-03.) Plaintiff reported that he resides alone, occasionally drives, can walk only two to three blocks before resting, can dress and shower himself, can prepare simple meals, manages his own funds, and experiences pain, cramps, and muscle spasms that often disturb his sleep. (Tr. 402.) Plaintiff was tearful

throughout the exam, and complained of depression "because of chronic pain, inability to return to work, and restricted physical activities." (*Id.*) His mental activity was logical, spontaneous, and organized; he denied psychotic symptoms or paranoia. (*Id.*) Plaintiff wore a soft brace on his back and walked with a cane during the examination. (Tr. 403.) Plaintiff was diagnosed with mild adjustment disorder secondary to chronic pain and financial worries. (*Id.*) It was noted that "There are no significant psychiatric symptoms however that appear to be interfering with his ability to appropriately interact with others, do work related activities at a sustained pace, or keep up with his [activities of daily living] independently." (*Id.*) Plaintiff was assessed with a Global Assessment of Functioning ("GAF") score of 60. (*Id.*)

On December 26, 2012, state agency consultant, Rose Moten Ph.D., opined that plaintiff has a mild affective disorder that mildly restricts his activities of daily living; social functioning; and concentration, persistence, or pace. (Tr. 94.)

On January 25, 2013, Alan Green, M.D. treated Plaintiff for complaints of body pain, a pinched nerve in his back, weakness in his right upper extremity with decreased power and grip, muscle spasms in his right upper extremity and thorax, and pain radiating into his right leg. (Tr. 480.) Dr. Green diagnosed Plaintiff with cervical radiculopathy and lumbar radiculopathy, and referred him to a surgeon. (Tr. 481.) In a medical statement completed that same day, Dr. Green reported that he observed decreased strength in the upper right extremity, and decreased range of motion in the shoulders. (Tr. 406, 477.) Dr. Green opined that Plaintiff is precluded from working and suffers from severe pain. (*Id.*) He also opined that Plaintiff can stand for fifteen minutes at one time; sit for thirty minutes at one time; occasionally lift 10 pounds, bend, balance, manipulate with his left hand, and raise his arms over his shoulders;

10

and never stoop, manipulate with his right hand, or frequently lift weight. (*Id.*) Dr. Green noted that Plaintiff needs to see a neurosurgeon and needs progressive physical therapy. (Tr. 407, 478.)

On March 7, 2013, Plaintiff complained of numbness and lack of strength, stiffness, headaches, and pain in his lower back to Dr. Green. (Tr. 479.) Dr. Green observed decreased muscle power in Plaintiff's right upper extremity. (*Id.*)

### 3.    Function Reports

On January 30, 2013, Plaintiff completed a function report. (Tr. 179-86.) Plaintiff reported that he is "unable to perform job requirements due to pain/fatigue [and] severe discomfort." (Tr. 179.) Plaintiff reported that he has difficulty finding a comfortable position and sleeping. (Tr. 180.) He is able to complete all personal care tasks; prepares quick meals, such as cereal or frozen meals; drive a car, and watch television. (Tr. 180-82.) He does not complete house and yard work, shop, or go outside often. (Tr. 181-82.) He wrote that he has issues getting along with others because he is "always agitated because of pain – argumentative." (Tr. 183.) He reported that he can walk a couple blocks/minutes without rest, and his condition affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, and use hands. (*Id.*) He did not report that he uses an assistive device. (Tr. 185.) A childhood friend, Theoddeus D. Gordon, completed a third-party function report on March 25, 2008. (Tr. 207-14.) This report largely corroborates Plaintiff's report.

### 4.    Plaintiff's Testimony

On November 27, 2013, Plaintiff testified before the ALJ. Plaintiff stated that his average neck pain on a scale of one to ten is a six to eight. (Tr. 48.) The pain radiates down his

back and into his arms causing numbness in his hands a couple times a week. (Tr. 49-50.) He takes aspirin for the pain, but no longer takes narcotics because of stomach and headache issues. (Tr. 49.) Plaintiff also reported pain in his right leg and hip from a torn hamstring. (Tr. 50-51.) His leg occasionally gives out with activity. (Tr. 52.) Plaintiff testified that three to five times a week he does not complete personal care tasks, that he never vacuums or does laundry, and he only occasionally washes dishes. (Tr. 51.) Plaintiff testified that he does not frequently read or watch television because he gets "stiffness and spasms in my neck if I focus too much." (Tr. 53.) He stated that he can only focus for ten to twenty minutes and that he gets spasms when he looks down. (*Id.*) He also testified that he gets tired when he uses the computer. (Tr. 54.) He testified that he can sit for forty five minutes, stand for five minutes, and walk two blocks. (Tr. 56.) He has a cane, but only uses it when he needs to walk more than two or three blocks. (*Id.*) He can lift fifteen to twenty pounds, and he tries not to stoop, crouch, kneel, crawl, or reach his arms out because of fatigue and possible pain. (Tr. 57-58.) He feels perpetually fatigued. (Tr. 58.) Plaintiff testified that he picked December 2011 as the date of disability because he fell down the stairs and that is when the fatigue and weakness began. (Tr. 62.) He did not receive treatment for the fall. (*Id.*)

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources"

include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and

are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's residual functional capacity ("RFC"), and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record

14

and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390.

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL

374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

16

### G.    Analysis

Plaintiff contends that the ALJ erred by finding that Plaintiff does not meet listing 1.04. (Doc. 13, at 13-16.) Plaintiff further asserts that the RFC is not supported by substantial evidence because the ALJ did not include nonexertional limitations, erred in assessing Plaintiff's credibility, erred in assigning weight to the medical opinions of record, erred in assessing Plaintiff's mental RFC, failed to comply with 20 C.F.R. § 416.945, and failed to comply with SSR 96-8p. (*Id.* at 9-13.)

Plaintiff raises a number of underdeveloped arguments and generalized accusations of ALJ misfeasance with little citation to case law or the administrative record. Defendant has brought it to the Court's attention that Plaintiff's counsel has been previously warned that "this Court will carefully examine his submissions in future suits to ensure that they advance specific, narrowly tailored, and properly supported arguments that rest upon (and cite to) the facts of a particular case" and that "[f]ailure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings." *Roberts v. Comm'r of Soc. Sec.*, No. 14-11994, 2015 WL 5439725, at *2 (E.D. Mich. Sept. 15, 2015) (Rosen, J.); see also *Spiteri v. Colvin*, No. 14-14140, 2015 WL 7258749, at *3 n.3 (E.D. Mich. Nov. 9, 2015 (same) (Stafford, MJ). The Court notes that this is the third warning that attorney Joshua L. Moore has been given, and encourages him, yet again, to take heed of this warning. The Court has conducted a thorough review of the decision and medical record in this case, and is satisfied that the ALJ's decision is procedurally sound and supported by substantial evidence of record. However, I will address each of the arguments raised by Plaintiff in turn.

17

### 1.   Substantial Evidence Supports the ALJ's Step Three Findings

Plaintiff alleges that the ALJ never evaluated the medical evidence and made conclusory statements in determining whether Plaintiff meets or equals Listing 1.04. (Doc. 13, at 13-15.) Although it is Plaintiff's burden of proof at step three, the ALJ must provide sufficient articulation of his findings to permit meaningful review. *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416 (6th Cir. 2011); *Woodall v. Colvin*, No. 5:12cv1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013) ("[T]he ALJ must build an accurate and logical bridge between the evidence and his conclusion.").

Contrary to Plaintiff's allegation the ALJ explicitly considered Listing 1.04 in his opinion, concluding:

> The claimant's shoulder does not meet the listing under 1.02(B). He does not have significant limitation of motion, combined with an inability to perform fine and gross movements effectively, as defined under 1.00B(2)(c). The degenerative disc disease does not meet the listing of 1.04, as there is no credible evidence of nerve root compression, such as consistently positive straight leg raising tests, consistent radicular findings in a dermatomal pattern in the upper extremities, or a positive EMG. There is no evidence or diagnosis of arachnoiditis or stenosis.

(Tr. 26.) Thus the ALJ adequately explained her findings because she considered whether Plaintiff met each sublisting of listing 1.04. *Compare Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (finding that the ALJ erred by failing to evaluate or event mention listing 14.08), *with Luster v. Comm'r of Soc. Sec.*, No. 13-14748, 2015 WL 1439910, at *7 (E.D. Mich. Mar. 27, 2015) (distinguishing *Christephore* and finding the ALJ did not err even though he "did not recite each sublisting of 14.08(A)-(K) by name, [because] the ALJ reviewed the record and noted that plaintiff did not meet the requirements contained in each sublisting").

18

Plaintiff next argues that the medical evidence does satisfy listing 1.04(A) and (C). (Doc. 13, at 15.) The elements of Listing 1.04 are:

Disorders of the spine [] resulting in compromise of a nerve root [] or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, Subpt. P. App. 1, Listing 1.04.

With regard to Listing 1.04(A) plaintiff points to an MRI from April 2007 that reveals a disc herniation at c5-c6 impacting the thecal sac and spinal cord. (Doc. 13, at 13 (citing Tr. 238.)) He also points out that Plaintiff was diagnosed with a "herniated nucleus pulposus with C6 radiculopathy." (*Id.*; Tr. 246.) However, Plaintiff ignores the fact that Plaintiff had cervical spine fusion surgery in June 2007, and that a subsequent imaging study in January 2009 of his cervical spine showed no evidence of disc herniation. (Tr. 422, 455.) Thus I suggest that the 2007 MRI does not undermine the ALJ's analysis.

19

Plaintiff also points to an MRI from September 2000, which reveals a disc herniation at L5-S1 that compromises the right S1 nerve root. (Doc. 13, at 13 (citing Tr. 230).) The ALJ found moderate herniation L5/S1 was a severe impairment at step two. (Tr. 25.) However, as Defendant points out, substantial evidence still supports the ALJ's finding that there is no credible evidence of nerve root compression *to the degree required* by listing 1.04(A). Dr. Green did note muscle loss in the upper right extremity in March and April 2013 (Tr. 479-80); however just four months earlier in November 2012, Dr. Shelby-Lane observed that Plaintiff had a normal extremities exam, a negative straight leg raise, normal sensation, fair muscle tone, normal range of motion in all joints, normal reflexes, and no need for a walking aid. (Tr. 394, 396-98.) Throughout 2009, Dr. Ellenberg also consistently observed that Plaintiff had normal range of motion in his back and legs, normal gait, ability to heel and toe walk, ability to squat and rise, normal reflexes, and normal strength. (Tr. 408, 413, 416, 419.) EMG's in 2007, 2008, and 2009 were normal. (Tr. 279, 329, 422.) Plaintiff fails to point to anything in the record contradicting the ALJ's conclusion that the record lacks "credible evidence of nerve root compression, such as consistently positive straight leg raising tests, *consistent* radicular findings in a dermatomal pattern in the upper extremities, or a positive EMG." (Tr. 26.)

With regard to listing 1.04(C) Plaintiff does not point to any medically acceptable imaging evidencing lumbar spinal stenosis. Nor has the Court's review of the record revealed such evidence. Thus I suggest that the ALJ did not err reaching the conclusion that Plaintiff does not meet or equal listing 1.04.

## 2.      Substantial Evidence Supports the ALJ's RFC determination

Plaintiff asserts that substantial evidence does not support the ALJ's RFC determination because it does not "accurately portray" Plaintiff's "physical impairments and substantial treatment." (Doc. 13, at 10.) Plaintiff lists a series of errors alleging that they demonstrate that the ALJ's decision was not supported by substantial evidence: The ALJ "never accurately states what limitations Mr. Davis suffers from his severe impairments;" "never rejects Plaintiff's severe complaints of pain but [does not] evaluate it properly either;" "does not include non-exertional limitations;" and "outright misstates and minimizes Plaintiff's impairments throughout the decision without explanation." (Doc. 13, at 10-11.) Plaintiff repeatedly criticizes the decision stating for instance that "[t]he decision is so lacking in its detail and analysis that it is impossible to understand." Addressing nearly identical arguments from Plaintiff's counsel in *Gower v. Commissioner of Social Security*, the undersigned magistrate found that "Plaintiff's analysis . . . suffers all the evils it finds in the ALJ's." No. 13-14511, 2015 WL 163830, at *23 (E.D. Mich. 2015) (adopting report and recommendation). As pointed out in *Gower*:

> Plaintiff's argument makes little effort to show why she is disabled, and instead, in the most general terms, points out the things the ALJ did not do. Plaintiff would have done well to answer the questions her brief naturally provokes: what evidence supports her claim; how would a proper credibility analysis lead the ALJ to find disability; what exactly did the ALJ "mistate[] and minimalize[]"; and how does the ALJ's RFC not state "what limitations Ms. Gower suffers from her severe limitations." By not providing any substantive analysis, the argument flirts with waiver. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that . . . arguments adverted to in only a perfunctory manner, are waived.").

*Id.* Nonetheless the court will address each distinguishable argument raised here.

21

2:15-cv-13028-NGE-PTM   Doc # 15   Filed 06/15/16   Pg 22 of 30   Pg ID 581

## a.    Nonexertional Limitations

Plaintiff alleges that the ALJ did not state what limitations Plaintiff suffers from his severe limitations. (Doc. 13, at 10.) This is clearly inaccurate because that is exactly what an RFC does. *Gower*, 2015 WL 163830, at *23. In addition, contrary to Plaintiff's allegations the ALJ's RFC includes nonexertional limitations related to pain. (Doc. 13, at 11.) The ALJ noted that Plaintiff

> should have a sit/stand option at will. He should do no pushing or pulling with the lower extremities and no operation of foot controls. He should never climb ladders, ropes, or scaffolds. He can do no more than occasional climbing ramps or stairs, balancing, stooping, crouching, kneeling, and can never crawl. He can do no more than frequent rotation, flexion, or extension of the neck and no more than frequent reaching, with no more than occasional overhead reaching. He must avoid all exposure to hazardous machinery or unprotected heights. Work is limited to simple jobs as defined in the DOT with SVP levels 1 or 2, with simple, routine tasks. He should have no more than occasional interaction with the general public, co-workers or supervisors.

(Tr. 27.) These are considered non-exertional limitations. 20 C.F.R. §§ 404.1569a(c), 416.969a. Thus I suggest that the ALJ did not err.

## b.    Credibility Assessment

Plaintiff alleges that the ALJ made no attempt to analyze the factors set forth in Social Security Regulation 96-7p and never evaluated Plaintiff's subjective complaints. (Doc. 13, at 10-11.) This argument also fails. The ALJ thoroughly evaluated Plaintiff's subjective complaints noting that:

> Plaintiff stated he cannot sleep through the night and gets about five hours of interrupted sleep per night. He reported loss of appetite due and stomach pain from medication. He stated that he cannot sit, stand, or lay in one spot for longer than a few minutes. His muscles are not strong enough to hold up his neck. He cannot lift and has loss of range of motion of the neck. He cannot concentrate because of constant pain in the neck going to the right shoulder/back and into the right arm.

He stated he has some numbness when holding his arm in one spot for a long time and in the tips of his right fingers and thumb. He stated he is "on edge" more, feels angry about his injury, and feels out of control. . . . On Appeal, he stated he had worse spasms, increased pain, diminished strength, and extreme fatigue. . . . He testified that, on the alleged onset date he fell down the stairs and has had weakness and fatigue since then. He testified he can stand five minutes, walk two blocks, and can sit 45 minutes to an hour if he can stretch his legs.

(Tr. 28.) The ALJ then concluded that these contentions of pain and limitations were not credible because they are not supported by the diagnostic and clinical findings. (*Id.*) Specifically, the ALJ noted that after Plaintiff's cervical spine fusion in April 2007, Dr. McElroy released Plaintiff to return to work without restrictions in November 2007 and stated that he had nothing to support a disability application in May 2008. (Tr. 28-30.) This observation is supported by the record. (Tr. 280-81, 332.) The ALJ also noted that Plaintiff's medical records from 2008, 2009, and consultative examination in 2012 reveal only mild findings. (Tr. 29.) This is also supported by the record. The record from 2008 and 2009 demonstrates that Plaintiff had full range of motion of all his joints; normal gait; could tandem walk, heel walk, and toe walk; normal strength; and intact reflexes and sensation. (*See* Tr. 329, 331, 368-74, 408, 413, 416, 419, 422, 428.) Diagnostic testing of the cervical spine in 2009 was negative revealing only "a small broad-based posterior osteophyte complex at C4-C5 and the fusion at C5-C6." (Tr. 422, 455.) A bone scan showed "no focal lateralizing abnormality" and only "minor uptake and arthritic abnormalities around the shoulders, clavicles, and sternoclavicular joints." (Tr. 422.) EMG's in 2007, 2008, and 2009 were normal. (Tr. 279, 329, 422.) The consultative examination in 2012 revealed that Plaintiff could ambulate without assistance; get on and off a table slowly; heel, toe, and tandem walk slowly; and squat and bend to seventy percent and recover. (Tr. 394, 396-98.) Plaintiff also had normal range of

23

motion except in forward flexion of the hips and intact sensation. (*Id.*) Finally, the ALJ noted that the record reflects very little treatment since Plaintiff was awarded worker's compensation in 2009 and that Plaintiff failed to follow-up on recommended treatment for vertigo and spinal pain. (Tr. 28-30.) This too is supported by the record. Aside from two consultative examinations in 2012 Plaintiff visited a physician only twice—in January and March 2013— between his alleged onset date in December 2011 and the ALJ's decision in March 2014. (Tr. 479-81.) *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."). In addition, Dr. Tobar recommended that Plaintiff follow up with another provider for vertigo, (Tr. 381,) and Dr. Green recommended that Plaintiff needed to follow up with a neurosurgeon and obtain progressive physical therapy. (Tr. 407, 481.) However, the records do not show that Plaintiff obtained this treatment. *See* SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed . . . ."). Additionally, there is no record of formal psychiatric treatment or counseling.

This careful parsing of the evidence belies Plaintiff's assertion that the ALJ ignored the credibility and analysis. She reviewed evidence from the relevant period, and she cited supporting medical opinions. Nothing in the record contradicts the analysis or casts doubt on the ALJ's conclusions. Thus I suggest that the ALJ did not err.

### c.    **Weight of Opinion Evidence**

Plaintiff alleges that the ALJ erred in weighing the opinions of Dr. Green and Dr. Shelby-Lane. First, with regard to Dr. Green, Plaintiff sates that "the ALJ seems to reject

treating physician Dr. Green in a bizarre rant of unintelligible statements" and "never assigns any weight to the treating physician which is legal error." Contrary to Plaintiff's assertion the ALJ clearly assigned little weight to Dr. Green's findings stating that:

> Dr. Green's own treatment notes do not support a finding of "disabled", as reflected in Medical Statement dated January 25, 2013 . . . . While the claimant may have ongoing pain, it is out of proportion to the diagnostic and clinical findings. A finding of disability is further inconsistent with Dr. McElroy's release to work with no restrictions in 2007, and the claimant's very minimal treatment since 2009. Further Dr. Green's statement reflects that the claimant has not followed through with proper treatment, as he stated, "this patient needs reevaluation by neurosurgery and progressive physical therapy."

(Tr. 30.) Contrary to Plaintiff's assertion I note that Dr. Green was not owed the deference of a treating physician because he wrote his opinion regarding Plaintiff's limitations the same day that he first examined Plaintiff. (Tr. 403-07, 480-81.) *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (finding that a single examination did not establish a treating physician relationship); *Rodgers v. Comm'r of Soc. Sec.*, No. 13-cv-13746, 2014 WL 6612368, at *13 (E.D. Mich. Nov. 20, 2014) ("In the Sixth Circuit, more than one examination is required to attain treating-physician status." (quotation omitted)). Regardless, Plaintiff fails to challenge the ALJ's reasoning in his brief; thus Plaintiff has waived any argument of error in the weight assigned to Dr. Green's opinion. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived."); *Bracey v. Comm'r of Soc. Sec.*, No. 10-12659, 2011 WL 3359678, at *6 (E.D. Mich. July 13, 2011) ("Any issue not raised directly by plaintiff is deemed waived."), *report and recommendation adopted by*, 2011 WL 3359924 (Aug. 4, 2011).

Plaintiff next alleges that the ALJ erred by assigning great weight to the opinion of consultative examiner Dr. Shelby-Lane that Plaintiff "may have difficulty with repetitive bending, pushing, pulling, and lifting due to his previous neck surgery." (Tr. 30; Doc. 13, at 12.) Specifically, Plaintiff alleges that the ALJ never discussed Dr. Shelby-Lane's opinion that Plaintiff would need "long-term, ongoing care for management." (Doc. 13, at 12.) Defendant argues that the ALJ did not err because Dr. Shelby-Lane's statement is not a medical opinion under 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), which states, "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." (Doc. 14, at 21.) However, even assuming that Dr. Shelby-Lane's statement is a medical opinion, Plaintiff has failed to show how he has been harmed by the ALJ's analysis or how this opinion should have changed the ALJ's RFC assessment. Thus Plaintiff has failed to show error in the weight assigned to Dr. Shelby-Lane's opinion.

### d.    Mental RFC

Plaintiff next argues that the RFC is not supported by substantial evidence because it does not include limitations related to Plaintiff's adjustment disorder. (Doc. 13, at 2.) However, the ALJ specifically accounted for Plaintiff's adjustment disorder by finding that Plaintiff could perform jobs at SVP level 1 or 2 with simple, routine tasks and that he "should have no more than occasional interaction with the general public, co-workers, or supervisors." (Tr. 27.) Plaintiff's does not address how these findings do not adequately account for his limitations. Therefore, I suggest that Plaintiff has waived this argument.

26

e.      20 C.F.R. § 416.945

Plaintiff next argues that the ALJ erred by failing to engage in a function by function analysis of the mental RFC as required by 20 C.F.R. § 416.945. (Doc. 13, at 12.) Under 20 C.F.R. § 416.945(c) an ALJ must consider the following when assessing a claimant's mental abilities:

> we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

Here, the ALJ satisfied this requirement at Step Three in addressing whether Plaintiff meets or equals the criteria of Listing 12.04. (Tr. 26-27.) Specifically the ALJ found moderate restriction in plaintiff's concentration, persistence, or pace and social functioning. (Tr. 26-27.) It was not necessary for the ALJ to repeat this analysis because the Court considers the entire opinion and the evidence of record in determining whether the RFC adequately describes the plaintiff's limitations. *Smith v. Comm'r of Soc. Sec.*, No. 13-11610, 2014 WL 4605826, at *11 (E.D. Mich. Sept. 15, 2014). Thus I suggest that the ALJ did not fail to comply with 20 C.F.R. § 416.945.

f.      SSR 96-8p

Finally, Plaintiff argues that the ALJ failed to meet the requirements of SSR 96-8p, 1996 WL 374184, and again asserts that the ALJ did not discuss any evidence to support her conclusion. (Doc. 13, at 13.)

27

SSR 96-8p simply directs an ALJ to assess an RFC in the context of what a claimant can do on a "regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1-2. There is no indication this ruling was intended to impose a formalistic requirement that an ALJ expressly state that the RFC reflects a claimant's ability to perform the specified level of activity on a regular and continuing basis. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 117-18 (6th Cir. 2010) ("The only thing arguably missing from the ALJ's decision is a specific discussion of Plaintiff's ability to sustain work in an ordinary day, but it is implicit in her opinion that this ability is only moderately affected by Plaintiff's mental impairments."); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.") An "ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado*, 30 F. App'x at 548. Here the ALJ discussed all the relevant evidence, cited supporting facts and evidence, and concluded that the evidence does not preclude Plaintiff from performing a limited range of sedentary work. (Tr. 25-31.) Thus I suggest that substantial evidence supports the ALJ's RFC assessment.

## H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Davis's Motion for Summary Judgment (Doc. 13) be **DENIED**, the Commissioner's Motion (Doc. 14) be **GRANTED**, and that this case be **AFFIRMED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987.) Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

29

Date:  June 15, 2016                        S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge


# CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: June 15, 2016                         By s/Kristen Krawczyk
                                            Case Manager